**Lisa L. FITZGERALD, Plaintiff–Appellant,**

v.

**William HENDERSON, Postmaster General, United States Postal Service, Defendant–Appellee.**

No. 99–6124.

United States Court of Appeals, Second Circuit.

Argued May 9, 2000.

Decided May 31, 2001.

invidious distinction between types of reli- gious services.

Peter Henner, Clarksville, NY, for Plaintiff–Appellant.

David G. Karro, Attorney, United States Postal Service, (R. Andrew German, Managing Counsel, United States Postal Service, Washington, DC, on the brief), for Defendant–Appellee.

Before KEARSE and JACOBS, Circuit Judges, and KORMAN, Chief District Judge *.

KEARSE, Circuit Judge:

Plaintiff Lisa L. Fitzgerald appeals from a judgment of the United States District Court for the Northern District of New York, Thomas J. McAvoy, then-*Chief Judge*, dismissing her amended complaint alleging that her employer, defendant United States Post Office ("USPS" or "Postal Service"), discriminated against her on the basis of gender, in violation of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 (1994 & Supp. IV 1998) ("Title VII"). The district court granted summary judgment in favor of the Postal Service on the principal grounds that (a) most of the alleged incidents underlying Fitzgerald's claims of hostile work environment and disparate treatment were time-barred; (b) the last incident complained of, though not time-barred, was an insufficient basis for those claims or for a claim of constructive discharge; and (c) Fitzgerald had failed to exhaust administrative remedies with respect to her claim of retaliation. On appeal, Fitzgerald contends principally that her claims based on earlier incidents were timely under the "continuing violation" doctrine; that her claim of retaliation was properly exhausted because it was so related to her other claims that it was within the scope of the administrative agency's investigation; and that the record was sufficient to allow her to pursue her claims of disparate treatment, retaliation, and constructive discharge. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings.

## I. BACKGROUND

Fitzgerald, employed by the Postal Service, worked as a letter carrier at the Post Office in Lake Placid, New York, from 1986 until September 25, 1997. In August 1994, Timothy Gerling began working as a supervisor at the Lake Placid Post Office and had direct supervision of Fitzgerald. The present action centers on events alleged to have occurred in connection with Gerling's supervision of Fitzgerald. The following description, taken largely from various sworn documents submitted in the district court, views the events in the light most favorable to Fitzgerald as the party opposing summary judgment.

### A. The Events

#### 1. Sexual Harassment by Gerling

From his August 1994 arrival at the Lake Placid Post Office until the spring of

---

* Honorable Edward R. Korman, Chief Judge of the United States District Court for the East-ern District of New York, sitting by designation.

1995, Gerling showered Fitzgerald with unwanted personal attention of a sexual nature, including the following. Each day he entered the cubicle in which Fitzgerald sorted mail, stood inappropriately close to her, blocked her exit, and laid his hand softly on her shoulder. He repeatedly shook hands with Fitzgerald in a way that was sexually suggestive, in both manner and duration, as he attempted to engage her in non-work-related conversations. He made inappropriate remarks about Fitzgerald's body and commented that she looked nice in shorts; he inquired about Fitzgerald's marriage; he told Fitzgerald that his own wife was "no fun." He repeatedly stared at Fitzgerald lustfully. He touched and ran his fingers through her hair. On at least one occasion Gerling embraced her.

Fitzgerald resisted Gerling's advances. He invited her to go dancing; she declined. He invited her to lunch; she declined. He told her he liked long hair; she promptly had her hair cut short. Fitzgerald attempted to make clear to Gerling that she was happily married and was not interested in having a sexual relationship with him. Gerling was not deterred. On several occasions, Gerling summoned Fitzgerald to his office, where he attempted to engage her in personal conversation. On one such occasion, Gerling removed his tie, began unbuttoning his shirt, and said to Fitzgerald, "I will father your first child." Fitzgerald promptly left Gerling's office.

Fitzgerald told Gerling that his comments were inappropriate and made her uncomfortable. She asked him to stop coming into her work area, and she began to refuse to shake his hand. Gerling persisted. Fitzgerald complained to Lake Placid Postmaster Dennis King and asked him to stop Gerling from frequenting her cubicle and harassing her; King took no action.

In February or March 1995, Fitzgerald began to position mail gurneys at the opening of her cubicle in an effort to keep Gerling out. Gerling continued to summon Fitzgerald to his office, purportedly to discuss work, but in fact to attempt non-work-related conversations. On one such occasion, Gerling suggested to Fitzgerald that he would be willing to teach her "relaxation techniques."

2. *Gerling's Unwarranted Criticism of Fitzgerald's Work*

In the spring of 1995, Gerling finally ceased making sexual advances toward Fitzgerald. Instead, he turned hostile and, without any objective justification, began to shower her constantly with criticism about her work. From that time, on a continuing basis through 1996 and into September 1997, Gerling was aggressively hostile and increasingly abusive toward Fitzgerald in their day-to-day dealings. He excessively followed Fitzgerald on her postal route. Though Fitzgerald's work was exemplary, Gerling regularly and unfairly criticized her, berating her about her hours and productivity. He demanded more production from Fitzgerald and treated her more harshly than similarly situated male employees and than two other female employees who had granted or were granting him sexual favors. Gerling criticized Fitzgerald whenever she worked overtime; he forced her to work unscheduled overtime.

Gerling also denied Fitzgerald her seniority rights in certain work assignments, forcing her to work when she was not scheduled to work so that a female employee with whom Gerling was having an affair, and to whom Fitzgerald was senior, would be free to travel out of town with Gerling. On one such occasion in April 1995, when Fitzgerald declined to work an unscheduled weekend, Gerling took disci-

plinary action against her by having Postmaster King write her a letter of warning. On receipt of that letter, Fitzgerald, *inter alia*, threatened to file an administrative complaint against Gerling for sexual harassment. Gerling withdrew the letter on April 20, 1995, but his face-to-face verbal abuse of Fitzgerald intensified.

On at least three occasions in the period 1995–1997, Fitzgerald asked Postmaster King to end Gerling's hostile and harassing behavior toward her. King rejected all of her requests for assistance. His response on one occasion was, "All you women do is complain."

Fitzgerald's ability to tolerate Gerling's abuse came to an end on September 25, 1997, after Gerling summoned Fitzgerald to a meeting for a discussion of her supposed failure to make her postal deliveries as expeditiously as possible. At that meeting, Gerling yelled profanities at Fitzgerald, thrust his finger close to her face, and physically intimidated her. That confrontation, which Fitzgerald terms the proverbial straw that broke the camel's back, caused her to be so distraught that she could not, despite her best efforts, continue to do her work. She left the facility and took sick leave. Since that date, she has been unable to resume her job.

### B. *Fitzgerald's Administrative Complaint*

On October 24, 1997, pursuant to 42 U.S.C. § 2000e–16 and 29 C.F.R. § 1614.105 (2000), which deal with employment discrimination claims by federal employees, Fitzgerald contacted a Postal Service Equal Employment Opportunity ("EEO") Counselor in the USPS Human Resources Division ("HRD") to complain of Gerling's conduct. In early November, she completed an "Information for Precomplaint Counseling" form on which she summarily described her complaints about

Gerling's unconsented touchings, suggestive remarks, and sexual overtures, and stated that "[w]hen I rebuffed him he retaliated." Fitzgerald filed under oath a formal administrative complaint ("EEO Complaint") with HRD in February 1998 (and later filed a more detailed supplemental complaint, also under oath), alleging "numerous acts of discrimination based on [Fitzgerald's] sex, continuing sexual harassment, retaliation, and hostile work environment" (EEO Complaint ¶ 20). The EEO Complaint alleged that Gerling had engaged in "a campaign of sexual discrimination and harassment" against Fitzgerald (*id.* ¶ 8), and that Fitzgerald had "rejected Mr. Gerling's unsolicited and unwelcome advances" (*id.* ¶ 9). It alleged that

> [b]ased on this rejection, Mr. Gerling embarked on a campaign of harassment and abuse against complainant. This intensive, severe, ongoing harassment and abuse was a direct result of complainant's sex and in retaliation for her rejection of his unwanted sexual advances.

(*Id.* ¶ 10.) The EEO Complaint also alleged that Postmaster King had repeatedly been made aware of Gerling's harassing and discriminatory conduct and had failed to take any steps to halt that conduct.

HRD, relying on 29 C.F.R. § 1614.105 (federal employee, before bringing a Title VII action against a federal agency, generally must contact an EEO counselor at the agency within 45 days after the allegedly discriminatory action occurred), and *id.* § 1614.107 (2000) (agency generally must dismiss claims of violations outside the 45 day period), rejected as time-barred Fitzgerald's complaints with respect to any events alleged to have occurred earlier than 45 days prior to her first contact with the EEO Counselor. Thus, HRD refused to consider Fitzgerald's claims that Gerling had sexually harassed her prior to

April 1995 and that he thereafter had subjected her to a hostile work environment prior to September 9, 1997. HRD stated that

> [a]lthough more than one of the acts fell within the regulatory 45–day limitation period as a continuing violation, the record indicates you had prior knowledge or suspicion of discrimination months before you sought EEO counseling in that your attorney representative's correspondence states "postal service management has been made repeatedly aware of this situation". Further, a reasonable person in your position would have suspected discrimination months, even years, before you initiated EEO counseling on October 24, 1997.

(Letter from HRD to Fitzgerald dated March 27, 1998 ("HRD Letter"), at 2.) HRD stated that it would investigate Fitzgerald's complaints of hostile work environment "during the period September 9 (45 days prior to counselor contact) through September 25, 1997 (last day worked)." (*Id.* at 3.) The letter advised Fitzgerald of her right, within 90 days, to pursue the rejected claims in federal court.

## C. *The Present Action*

Fitzgerald commenced the present Title VII action in June 1998. In July, HRD concluded its investigation of Fitzgerald's complaints of hostile work environment during the period September 9–25, 1997, and dismissed the remainder of her EEO proceeding. In August, Fitzgerald filed in the district court a Verified Amended Complaint ("amended complaint" or "complaint") alleging the events described in Part I.A. above.

The complaint alleged that Gerling's conduct subjected Fitzgerald to sexual harassment on the basis of her gender, and that as a result of both Fitzgerald's unwillingness to engage in a sexual relationship with him and her threat to file an EEO complaint against him, Gerling became increasingly hostile toward Fitzgerald and retaliated against her by constantly berating her and unfairly criticizing her work. The complaint asserted that Gerling's conduct was attributable to USPS because Fitzgerald had repeatedly complained about it to King, King knew that Fitzgerald was being retaliated against because of her refusal to have a sexual relationship with Gerling, and King took no remedial action. Fitzgerald alleged that as a result of Gerling's conduct and King's failure to intervene, she had suffered a total medical disability, forcing her to undergo regular and extensive medical treatment for, *inter alia*, a form of agoraphobia, sleeplessness, depression, and loss of nearly 25 percent of her body weight.

In October 1998, USPS moved for, *inter alia*, "[p]artial" summary judgment, arguing (1) that Fitzgerald had failed to exhaust administrative remedies on her claim of retaliation, (2) that her claims based on incidents that occurred more than 45 days prior to her October 24, 1997 initiation of contact with HRD were time-barred, and (3) that within the final 45–day period there was no adverse employment action. In support of its first two contentions, USPS submitted copies of Fitzgerald's filings with HRD, including her two sworn EEO pleadings and her subsequent EEO affidavit. The substance of those documents was the same as the substance of her amended complaint, recounting the events described in Part I.A. above. The evidence that USPS submitted to support its third contention was scant. A 10–line affidavit from Gerling recited little more than his name, rank, and serial number. He recounted the date on which he began work at the Lake Placid Post Office, the fact that he had not known Fitzgerald theretofore, and his withdrawal of the disciplinary letter on April 20, 1995. He said

nothing of his dealings with Fitzgerald on September 25, 1997, or during the preceding 45 days (whose events USPS did not contend were time-barred), or during the more extended period of alleged continual harassment, or during the early period of alleged sexual advances. Gerling also said nothing about the quality of Fitzgerald's work. USPS submitted no affidavit from King and presented no evidence to counter Fitzgerald's assertion that she had repeatedly complained to King of Gerling's harassing conduct, nor any evidence to suggest that King had taken any step in response to her complaints.

Fitzgerald opposed the summary judgment motion, contending, *inter alia*, (1) that her retaliation claim was exhausted because it was reasonably within the scope of HRD's investigation of the claims she had asserted before the agency, (2) that even the earliest incidents of which she complained should be considered under the continuing violation doctrine, and (3) that she had sufficiently asserted that debilitating harassment had occurred over a period of some three years. Fitzgerald also requested that the summary judgment motion not be considered before she had an opportunity to conduct discovery.

In a December 29, 1998 opinion reported at 36 F.Supp.2d 490, the district court granted summary judgment dismissing the complaint in its entirety. As a procedural matter, the court found that discovery was not necessary because Fitzgerald had the information she needed in order to oppose summary judgment:

> "Rule 56(f) is not appropriate where the discovery allegedly desired 'pertains to information already available to the non-moving party.' " .... Here, Plaintiff alleges numerous grounds in her Title VII claim against Defendant. She should, therefore, be able to demonstrate, at the very least, a material issue of fact to

defeat summary judgment through her own affidavit, and by relying on her own witnesses and documents. Accordingly, Plaintiff has failed to show that summary judgment is premature under Rule 56(f).

36 F.Supp.2d at 497. The district court also appeared to accept assertions in USPS's motion as true because, in opposition, Fitzgerald "ha[d] not ... submitted an affidavit stating her version of the facts giving rise to the lawsuit." *Id.* at 496. The court stated that

> [p]laintiff's reliance on her Amended Complaint to refute the ... declarations and documentary evidence in support of Defendant's motion for summary judgment is plainly improper. It is axiomatic that when the moving party has supported the motion by affidavits and documentary evidence, the non-movant
>
> > [M]ay not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [ ] Rule [56], must set forth specific facts showing that there is a genuine issue [of material fact] for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.
>
> Fed.R.Civ.P. 56(e). Because Plaintiff failed to respond with affidavits or otherwise as required by Rule 56(e), the only question that remains is whether summary judgment is "appropriate"; that is, whether Defendant's evidentiary material establish[es] an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.

36 F.Supp.2d at 497 (internal quote alterations in district court opinion).

As to the merits of the motion, the court ruled that most of Fitzgerald's claims of

disparate treatment and sexual harassment were time-barred and that the only event timely challenged was Gerling's conduct on September 25, 1997. The court rejected Fitzgerald's contention that all of Gerling's allegedly sexually harassing or retaliatory conduct should be considered pursuant to the continuing violation doctrine, stating that Fitzgerald had failed to show a formal policy or widespread practice of discrimination:

> [T]he events that give rise to Plaintiff's hostile work environment claim occurred as early as October 1994. At most, Plaintiff's administrative charge and federal complaint describe "multiple incidents of discrimination" directed solely at Plaintiff, rather than a formal or widespread identifiable discriminatory policy or practice. See Quinn[ v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998) ]; Lambert[ v. Genesee Hospital, 10 F.3d 46, 53 (2d Cir.1993), cert. denied, 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994) ]. Indeed, many of the allegations supporting Plaintiff's hostile work environment claim address actions that occurred only once or on a few occasions. See EEO Complaint at ¶¶ 12–13, 16; Amended Compl. at ¶¶ 21–26, 32, 64–65, 71.

36 F.Supp.2d at 504. See also id. at 501 ("Plaintiff's claim, in its entirety, sounds in sexual discrimination and sexual harassment. She makes no allegations that Defendant maintained a retaliatory employment policy. Thus, Plaintiff's allegations of retaliation cannot be read to state a continuing violation claim.").

The court also concluded that Fitzgerald's claims of disparate treatment and hostile work environment, to the extent that they were timely, lacked merit because Fitzgerald "cannot show that she suffered an adverse employment action," id. at 503. The court noted that Gerling's alleged conduct at the September 25, 1997 meeting, yelling, using profanity, and behaving in a physically intimidating manner, was "in and of itself" insufficient to show a materially adverse change in the terms and conditions of Fitzgerald's employment. Id.

> The September 1997 incident is not sufficiently severe to constitute actionable sex harassment or constructive discharge. Indeed, Gerling's actions during that meeting neither drastically altered Plaintiff's working conditions nor compelled a reasonable person in her position to resign. Thus, Plaintiff has failed to establish a prima facie case of hostile work environment.

Id. at 504–05; see id. at 503 (same with respect to claim of disparate treatment).

As to Fitzgerald's claim of retaliation, the court concluded that it lacked jurisdiction because Fitzgerald had not asserted in the administrative proceedings that Gerling retaliated against her because of her threat to file an EEO complaint:

> In this case, Plaintiff filed her EEO Complaint on February 2, 1998, alleging "sexual discrimination and sexual harassment for the period October 14, 1994 to September 25, 1997." EEO Complaint, at ¶ 5. Plaintiff goes on to allege that "Gerling began a campaign of sexual discrimination and harassment against [Plaintiff]." Id. at ¶ 8. Notably, these statements fail to mention any reference to a claim of retaliation. Furthermore, Plaintiff failed to either mark retaliation as a type of discrimination alleged in her EEO Complaint or identify the prior protected EEO activity underlying such a claim.... A careful reading of the complaint evinces allegations of sexual discrimination and harassment against Gerling only. Thus, Plaintiff's EEO Complaint fails to ade-

quately place Defendant on notice of potential allegations of retaliation. *Id.* at 498. The court ruled that Fitzgerald stated no cognizable claim for retaliation in alleging simply that Gerling abused her as retribution for resisting his sexual advances, reasoning that "rejection of sexual advances is not a protected activity":

> Plaintiff argues that "the underlying administrative complaint does allege that Gerling retaliated against [ ] Fitzgerald because she resisted his sexual advances." Pl. Mem. of Law at 18; EEO Complaint at ¶¶ 10, 15. This, however, is insufficient to establish a claim of prior protected EEO activity for which Gerling retaliated against the Plaintiff. *See Rashid v. Beth Israel Med. Ctr.*, 1998 WL 689931, at *2 (S.D.N.Y. October 2, 1998) (holding that rejection of sexual advances is not a protected activity under Title VII)....

36 F.Supp.2d at 498–99. The court concluded that such allegations as Fitzgerald had made in her EEO Complaint were not sufficiently related to her current claim of retaliation for participation in protected EEO activity to fit within an exception to the exhaustion requirement. *See id.* at 498–501.

Judgment was entered in January 1999, dismissing the complaint. Fitzgerald timely moved for reconsideration, contending that because USPS's motion had requested only "[p]artial" summary judgment, the court improperly dismissed the remainder of her complaint *sua sponte* without giving her an adequate opportunity to oppose. She also argued that the court should not have disregarded the allegations of her complaint since it was verified and thus should have been treated as an affidavit.

In an opinion reported at 36 F.Supp.2d 490, 505 (1999), the district court denied reconsideration. It stated that although USPS's motion was labeled one for "partial" summary judgment, its arguments had encompassed the entire complaint. Further, Fitzgerald could not validly contend that she lacked adequate notice, given that she had in fact responded to all of USPS's arguments. As to Fitzgerald's contention that the court should have treated her verified pleading as the equivalent of an affidavit, the court pointed to passages of its original opinion that cited various paragraphs of the amended complaint and indicated that it had in fact taken the complaint into account. Accordingly, the court concluded that "[t]reating plaintiff's Amended Complaint as an affidavit in support of her opposition to summary judgment does not yield a different result." *Id.* at 507.

This appeal followed.

## II. DISCUSSION

On appeal, Fitzgerald contends principally (a) that the district court erred in concluding that the continuing violation doctrine did not require consideration of events that occurred prior to September 9, 1997, in connection with her claims of disparate treatment and hostile work environment; (b) that she presented adequate support for those claims and her claim of retaliation; and (c) that she should be allowed to pursue a claim of constructive discharge as well. For the reasons that follow, we conclude principally that summary judgment dismissing the sexual harassment claim with respect to the period August 1994 through April 1995 ("Phase I") as untimely was proper, but that summary judgment dismissing as untimely the claim of hostile work environment from April 1995 through September 25, 1997 ("Phase II") was error. We conclude that Fitzgerald's retaliation claim was properly dismissed to the extent that it was based on her threat to file an admin-

istrative complaint against Gerling. And we conclude that the record reveals genuine issues of fact to be tried with respect to Fitzgerald's claims of hostile work environment, disparate treatment, and constructive discharge.

## A. *Substantive Title VII Principles*

■ Most of the substantive principles pertinent to this appeal are well established. Title VII makes it an unlawful employment practice for an employer to discharge or discriminate against any individual with respect to conditions of employment, *inter alia*, on the basis of gender. *See* 42 U.S.C. § 2000e–2(a). This provision "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotation marks omitted). To establish a prima facie case of disparate treatment, a plaintiff must show, *inter alia*, that she was subjected to adverse employment action, under circumstances giving rise to an inference of prohibited discrimination. *See, e.g., Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir.1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### 1. *Quid Pro Quo and Hostile Work Environment Harassment*

■ A plaintiff seeking relief for sexual harassment may proceed on a theory of, *inter alia, quid pro quo* harassment. *See, e.g., Torres v. Pisano*, 116 F.3d 625, 630 (2d Cir.), *cert. denied*, 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997). "[T]o establish a *prima facie* case of *quid pro quo* harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the

basis for decisions affecting the compensation, terms, conditions or privileges of her employment." *Karibian v. Columbia University*, 14 F.3d 773, 777 (2d Cir.), *cert. denied*, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994). "It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for [such] a decision...." *Id.* at 778; *see also Carrero v. New York City Housing Authority*, 890 F.2d 569, 577, 579 (2d Cir.1989) (*quid pro quo* claim established where the plaintiff's refusal to submit to supervisor's sexual demands and her complaints against him resulted in deficient training and demotion).

Disparate treatment prohibited by Title VII also encompasses sexual harassment that results in a "hostile or abusive work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *see also* Equal Employment Opportunity Commission Guidelines on Sexual Harassment, 29 C.F.R. § 1604.11 (2000) ("EEOC Guidelines"); *id.* § 1604.11(a) (sexual harassment includes "conduct [that] has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment"). In order to prevail on a claim of hostile-work-environment sexual harassment, a plaintiff must establish two elements.

First, she must prove that the harassment was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks omitted); *see, e.g., Meritor Savings Bank, FSB v. Vinson*, 477 U.S. at 67, 106 S.Ct. 2399; *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1041 (2d Cir.1993). Title VII does

not authorize a hostile work environment claim for conduct that was merely offensive, rather than sufficiently "severe or pervasive" that a reasonable person would find the environment hostile or abusive. *See, e.g., Harris v. Forklift Systems, Inc.,* 510 U.S. at 21, 114 S.Ct. 367; *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. at 67, 106 S.Ct. 2399 ("[N]ot all workplace conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII.").

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris v. Forklift Systems, Inc.,* 510 U.S. at 23, 114 S.Ct. 367.

■ Second, the plaintiff must show a specific basis for imputing the hostile work environment to the employer. *See, e.g., Perry v. Ethan Allen, Inc.,* 115 F.3d at 149; *Karibian v. Columbia University,* 14 F.3d at 779; *Kotcher v. Rosa & Sullivan Appliance Center,* 957 F.2d 59, 62 (2d Cir. 1992). Although limited defenses may be available, an employer is presumed responsible where the perpetrator of the harassment was the victim's supervisor. *See, e.g., Burlington Industries v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Ra-*

*ton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Richardson v. New York State Department of Correctional Service,* 180 F.3d 426, 441 (2d Cir.1999); *Perry v. Ethan Allen, Inc.,* 115 F.3d at 152–53. If the supervisor's harassment did not culminate in a "tangible employment action," *Burlington Industries, Inc. v. Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *see Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 294 (2d Cir.1999) (constructive discharge, *see* Part II.A.2. below, is not considered a "tangible" employment action for these purposes), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000), an employer may avoid liability if (a) it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) ... the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries, Inc. v. Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257; *see Faragher v. City of Boca Raton,* 524 U.S. at 807–08, 118 S.Ct. 2275; *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 767 (2d Cir.1998). Those circumstances constitute an affirmative defense on which the employer has the burden of proof. *See, e.g., Burlington Industries, Inc. v. Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257.

### 2. Adverse Employment Action

■ Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a "constructive" discharge. *See, e.g., Chertkova v. Connecticut Life Insurance Co.,* 92 F.3d 81, 89 (2d Cir. 1996).

> Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, inten-

tionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.

*Id.; see, e.g., Kader v. Paper Software, Inc.,* 111 F.3d 337, 341 (2d Cir.1997).

To find that an employee's resignation amounted to a constructive discharge, "the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

*Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 73 (2d Cir.2000) (quoting *Lopez v. S.B. Thomas,* 831 F.2d 1184, 1188 (2d Cir.1987) (other internal quotation marks omitted)).

 Even absent a discharge, invidious harassment that did not make the plaintiff's job unendurable or intolerable may support a claim of hostile work environment if the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.,* 510 U.S. at 21, 114 S.Ct. 367 (internal quotation marks omitted). "While a mild, isolated incident does not make a work environment hostile, the test is whether 'the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.'*" *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d at 70 (quoting *Torres v. Pisano,* 116 F.3d at 632 (emphasis in *Whidbee*)). "The effect on the employee's psychological well-being is ... relevant to determining whether the plaintiff actually found the environment abusive," though no one factor is determinative under the objective standard. *Harris v. Forklift Systems, Inc.,* 510 U.S. at 23, 114 S.Ct. 367. The victim's psychological well-being need not be damaged in order to find a hostile work environment; "[t]he fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." *Torres v. Pisano,* 116 F.3d at 631.

### 3. *Retaliation*

 Title VII also provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). The "'objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice.'" *Galdieri–Ambrosini v. National Realty & Development Corp.,* 136 F.3d 276, 291–292 (2d Cir.1998) (quoting *Manoharan v. Columbia University College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988)). To prevail on a claim of retaliation in violation of Title VII, the plaintiff must show that she "engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action." *Sumner v. United States Postal Service,* 899 F.2d 203, 208–09 (2d Cir.1990); *see, e.g., Quinn v. Green Tree Credit Corp.,* 159 F.3d at 768; *Gallagher v. Delaney,* 139 F.3d 338, 349 (2d Cir.1998); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1307 (2d Cir.1995).

### B. *Exhaustion and the Title VII Limitations Period*

Title VII requires that an employment discrimination claimant pursue administra-

tive procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures. *See generally* 42 U.S.C. § 2000e–16; *Briones v. Runyon,* 101 F.3d 287, 289–90 (2d Cir.1996). As indicated in Part I.B. above, federal employees are given 45 days from the date of the alleged discriminatory act in which to initiate administrative review of alleged employment discrimination. *See* 42 U.S.C. § 2000e–16; 29 C.F.R. § 1614.105. The 45–day period serves as a statute of limitations; thus, as a general rule, claims alleging conduct that occurred more than 45 days prior to the employee's initiation of administrative review are time-barred. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Downey v. Runyon,* 160 F.3d 139, 145–146 (2d Cir.1998).

▮▮▮▮ An exception to this rule is provided by the continuing violation doctrine. Under that doctrine, if a plaintiff has experienced a " 'continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " *Gomes v. Avco Corp.,* 964 F.2d 1330, 1333 (2d Cir.1992) (quoting *Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)); *see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274–75 (2d Cir. 1981) (consistent pattern of discriminatory hiring practices from 1971 to 1975 held to constitute a continuing violation), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time

barred." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996); *see, e.g., Lambert v. Genesee Hospital,* 10 F.3d 46, 53 (2d Cir.1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEO[ ] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 339 (1994). Although the continuing violation exception is usually associated with a discriminatory policy, rather than with individual instances of discrimination, and although acts so "isolated in time ... from each other ... [or] from the timely allegations[ ] as to break the asserted continuum of discrimination" will not suffice, *Quinn v. Green Tree Credit Corp.,* 159 F.3d at 766, a continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

▮▮▮▮ If a claimant has failed to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim. *See, e.g., Brown v. Coach Stores, Inc.,* 163 F.3d 706, 712 (2d Cir.1998); *Butts v. City of New York Department of Housing Preservation & Development,* 990 F.2d 1397, 1401–02 (2d Cir.1993). Even as to a claim not expressly pursued before the administrative agency, however, the court has jurisdiction if that claim is "reasonably related" to those that the plaintiff did assert before the agency. *See, e.g., id.* A claim is considered reasonably related if the conduct complained of would fall within the "scope of the EEOC investigation which

can reasonably be expected to grow out of the charge" that was made, *id.* at 1402. Successive conduct that is part of a continuing wrong is by its very nature "reasonably related" to the earlier conduct. *Cornwell v. Robinson,* 23 F.3d at 706. However, a plaintiff may not rely on a continuing violation theory of timeliness unless she has asserted that theory in the administrative proceedings. *See, e.g., Miller v. International Telephone & Telegraph Corp.,* 755 F.2d at 25.

### C. *Summary Judgment Principles*

A motion for summary judgment may not properly be granted unless "[1] there is no genuine issue as to any material fact and [2] the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). It is well established that, in addressing the first of these criteria, the district court's function is not to resolve questions of fact but solely to determine whether, as to any material fact, there is a genuine issue to be tried. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Board of Fire Commissioners,* 834 F.2d 54, 57–58 (2d Cir.1987). In making that determination, the court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Further, especially in the context of a claim of discrimination, the court should not view the record in piecemeal fashion. *Cf. Washington v. Davis,* 426 U.S. 229, 242, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)

("an invidious discriminatory purpose may often be inferred from the totality of the relevant facts"). As discussed in Part II. A.1. above, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.,* 510 U.S. at 23, 114 S.Ct. 367; *see, e.g., Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d at 69 (vacating grant of summary judgment because "[i]n concluding that the plaintiffs had failed to demonstrate the existence of a hostile work environment, the District Court appears to have analyzed the alleged incidents of harassment without looking at the totality of the circumstances."); *Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 570 (2d Cir.2000) ("Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances ."); *Stern v. Trustees of Columbia University,* 131 F.3d 305, 314 (2d Cir.1997) (jury "will be entitled to view the evidence as a whole in assessing whether there was impermissible discrimination").

█ If a rational juror could infer that a reasonable employee would have viewed a given series of events as materially worsening her working conditions, summary judgment dismissing her hostile work environment claim on the ground of lack of an adverse employment decision is inappropriate. *See, e.g., Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d at 71 (where reasonable jurors may disagree as to whether the incidents of harassment " 'would negatively alter the working conditions of a reasonable employee,' " " 'the potential for ... disagreement renders summary judgment inappropriate' " (quoting *Richardson v. New York State Department of Correctional Service,* 180 F.3d at 439)).

In general, a party opposing a properly supported motion for summary judgment

is not entitled to rely solely on the allegations of her pleading, but must show that there is admissible evidence sufficient to support a finding in her favor on the issue that is the basis for the motion. *See* Fed. R.Civ.P. 56(e). Ordinarily, this means that a plaintiff must present affidavits, based on "personal knowledge, ... set[ting] forth such facts as would be admissible in evidence," and as to which the affiant would be competent to testify. *Id.*

In the present case, although Fitzgerald did not submit an affidavit in opposition to USPS's summary judgment motion, *see* 36 F.Supp.2d at 496 ("Plaintiff .... has not even submitted an affidavit stating her version of the facts giving rise to the lawsuit"), the record reveals that there were four documents before the district court that were sworn to by Fitzgerald and presented her version of the facts. First, the amended complaint in the present action was verified. In the verification, Fitzgerald stated under oath that the pleading was "true to [her] own knowledge, except as to matters alleged upon information and belief." (Fitzgerald Verification, sworn to August 19, 1998.) This verification was the equivalent of the oath that would be given with respect to an affidavit. Thus, to the extent that the amended complaint asserted factual matters other than on information and belief, Fitzgerald was entitled to rely on it in opposing summary judgment.

In addition, the district court had before it Fitzgerald's EEO Complaint, her supplemental EEO complaint, and her EEO affidavit. Each was sworn to by Fitzgerald and, like the verified amended complaint, each presented her version of the events. The fact that they were submitted by USPS did not mean that they could not be relied on by Fitzgerald. To the extent that the four documents that were sworn to by Fitzgerald, and that were before the court on the motion for summary judgment, stated, other than on information and belief, facts as to which Fitzgerald was competent to testify, the court was required to accept their factual assertions as true and to draw from them all inferences that could reasonably be drawn in Fitzgerald's favor.

In granting USPS's motion for summary judgment, the district court referred several times to allegations of the amended complaint, as well as to allegations of Fitzgerald's EEO Complaint. But as discussed below, we conclude that the court did not take the sworn documents, or the inferences that could be drawn from them, in the light most favorable to Fitzgerald.

### D. Application of the Legal Principles to Fitzgerald's Claims

Analyzing the record within the above legal framework, we conclude that Fitzgerald's claim for sexual harassment prior to April 1995 (*i.e.,* Phase I) was properly dismissed as time-barred; that the claim of preferential treatment during Phase II for the two female employees with whom Gerling had affairs was also time-barred; and that the claim for retaliation was properly dismissed for lack of exhaustion only insofar as it was based on her threat to file an administrative complaint. Fitzgerald's claim of hostile work environment during Phase II, *i.e.,* after Gerling became abusive in April 1995, along with her embedded claim that Gerling retaliated against her in Phase II for rejecting his advances, were timely under the continuing violation theory; and Fitzgerald proffered sufficient admissible evidence to warrant a trial on these claims and on her claim of constructive discharge.

### 1. Application of the Continuing Violation Theory to Phase II

█ The district court ruled that Fitzgerald was not entitled to invoke the continuing violation theory

because she has not alleged an "ongoing discriminatory practice or policy" in her administrative complaint.... Rather than detailing specific instances evincing a *formal* discriminatory practice or policy, Plaintiff merely alleges hostile behavior by Gerling directed solely at Plaintiff for rejecting Gerling's sexual advances.

36 F.Supp.2d at 502 (emphasis added); *see also id.* at 504 (no showing of "a *formal or widespread* identifiable discriminatory policy or practice" (emphasis added) (internal quotation marks omitted)). Insofar as Fitzgerald's claim alleging a hostile work environment from April 1995 through September 25, 1997, is concerned, we have doctrinal, factual, and procedural difficulties with this ruling.

Most fundamentally, we disagree with the assumption that Fitzgerald could not avail herself of the continuing violation theory unless she could prove that USPS had a "formal" discriminatory practice or policy. As discussed in Part II.B. above, even where there is no formal policy, the continuing violation theory may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination.

■ In addition, we disagree with the view that Fitzgerald was not entitled to invoke the continuing violation theory without showing that the discrimination was "widespread." Although evidence that other female employees were subjected to the same type of harassment would be relevant, *see, e.g., Perry v. Ethan Allen, Inc.,* 115 F.3d at 150–51, the continuing violation theory may be applied where there is a showing of specific and related instances of discrimination against a single

plaintiff, *see generally Cornwell v. Robinson,* 23 F.3d at 697, 704; *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1311 (10th Cir.1999) ("[A] continuing violation may be based on either a series of related acts taken against a single individual or the maintenance of a company-wide policy or practice of discrimination."); *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d 1472, 1480–81 (9th Cir.1989) ("A continuing violation may ... be established not only by demonstrating a company[-]wide policy or practice, but also by demonstrating a series of related acts against a single individual.... In the latter instance, the question ... boils down to whether sufficient evidence supports a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation." (internal quotation marks omitted)).

■ We also note that if there were a requirement that a plaintiff show "a formal policy or that discrimination was 'widespread,'" 36 F.Supp.2d at 504, we would conclude that the district court's reliance even in part on Fitzgerald's failure to make such a showing was at the very least premature. USPS's motion for partial summary judgment was made less than two months after Fitzgerald filed her amended complaint, and Fitzgerald requested that the motion not be decided before she had an opportunity to conduct discovery. The court denied her request, stating that Fitzgerald had personal access to all she needed to oppose summary judgment. Faulting Fitzgerald for failure to make a showing of a formal policy—or of other matters that would similarly be beyond her personal knowledge—was incompatible with the court's denial of discovery.

■ As to whether Fitzgerald made a showing of personal harassment sufficiently repetitious to support invocation of the

continuing violation theory, we conclude that her sworn factual allegations of Gerling's constant stream of unjustified criticisms of her work described specific, related instances of harassment adequate to depict a continuity of allegedly unlawful conduct. Fitzgerald stated that "[a]fter the incidents of April and May[ ] 1995, and continuing through 1996 and 1997, Gerling became increasingly hostile and abusive toward plaintiff." (Amended Complaint ¶ 90.) She stated that he unjustifiably berated her about her hours and productivity; he attempted to force her to work overtime when she was not scheduled to work, and he criticized her when she worked scheduled overtime; he treated her more harshly than male employees and than two female employees with whom he had had or was having a sexual relationship. Fitzgerald alleged that the harassment was "ongoing," "repeated," and "continuing" (EEO Complaint ¶¶ 10, 12, 20), occurring "day to day" (Amended Complaint ¶ 92), as Gerling "regularly and unfairly criticized" her work (*id.* ¶ 93) "repeatedly and on a continuing basis" (*id.* ¶ 91); she alleged that "[t]hese acts of hostility, criticism and harassment were severe and persistent and occurred on a continuing basis from April 1995 through September 1997" (*id.* ¶ 121). Thus, although the final abusive incident on September 25, 1997, was separated from Gerling's final sexual advances by a gap of nearly 2½ years, Fitzgerald's assertions plainly alleged that there was no interruption in the allegedly unwarranted abuse to which she was subjected during that 2½-year Phase II period.

The district court's view that "many of the allegations supporting Plaintiff's hostile work environment claim address actions that occurred only once or on a few occasions," 36 F.Supp.2d at 504, thus did not accept the above sworn statements in the light most favorable to Fitzgerald, ei-

ther as to the quantity or as to the frequency of Gerling's abuse. We note also that it appears that Fitzgerald could, at trial, elaborate on the allegations of her pleadings. For example, in her answers under oath to interrogatories served by USPS (first submitted to the district court when Fitzgerald moved for reconsideration of the summary judgment decision), Fitzgerald gave additional examples of Gerling's abuse and disparate treatment of her, including constantly criticizing the length of time it took her to deliver her mail; yelling at her for parking improperly, when in fact her vehicles were properly parked; reprimanding her for leaving her work area, when she had a legitimate reason for leaving; and excluding her from work areas in which other employees were allowed. (Fitzgerald Response to USPS Interrogatory 11.) Fitzgerald also stated that she could not be more precise as to the dates on which specific types of abuse occurred because Gerling abused her "on a daily basis." (*Id.*) Whether or not Gerling's harassment is ultimately found to have materially altered Fitzgerald's working conditions, that conduct surely is alleged to have been continuing.

The record is also clear that Fitzgerald sufficiently presented the continuing violation theory in her administrative proceedings before HRD. The agency described Fitzgerald's claim as asserting, *inter alia,* "a hostile work environment after rejecting Supervisor TG's unsolicited and unwelcome advances ... *beginning in April 1995 continuing through September 25, 1997.*" (HRD Letter at 2 (emphasis added).) Although HRD declined to apply the continuing violation theory to Fitzgerald (*see id.* ("you may not avail yourself of the Commission's continuing violation theory")), the agency plainly understood her to have invoked that theory.

Finally, although the amended complaint was vague as to when Fitzgerald first complained to King about Gerling's conduct, her Response to USPS Interrogatory 7 indicated that she had complained to Postmaster King during Phase I; and the amended complaint made clear that she complained to him at least three times during Phase II, asking him to halt Gerling's harassing conduct. According to Fitzgerald, King refused to intervene and stated, "All you women do is complain." A jury would be entitled to credit Fitzgerald's testimony as to (a) Gerling's persistent harassment, (b) her repeated complaints to King, and (c) the lack of remedial action by King, whose sole response was to criticize the complainant for complaining. And it could infer from that evidence that the inaction and verbal response of the chief operating officer of the Lake Placid Post Office reflected a practice and policy of condoning sexual harassment.

We note that USPS, in its brief on appeal, faults Fitzgerald for failing to proffer admissible evidence as what Postmaster King may have said to Gerling after Fitzgerald complained of Gerling's conduct. For several reasons Fitzgerald's proffer of no more than her own understanding that King took no action against Gerling could not justify the entry of summary judgment against her. First, from the allegation that "King took no action" (Amended Complaint ¶ 70) it must be inferred that, if King took any action, Fitzgerald was not present. She was in no position to present evidence of events that occurred outside her presence, the district court having rejected her request for discovery. Further, if USPS contends that King in fact took remedial action in response to Fitzgerald's complaints of her supervisor's sexual harassment, that is a matter on which USPS, not Fitzgerald, has the burden of proof. See Part II.A.1. above. Finally, on the question of whether there was any remedial response to her complaints, Fitzgerald was not required to come forward with more evidence in opposing summary judgment unless USPS's motion was properly supported as envisioned by Fed. R.Civ.P. 56(e). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). She had no such obligation here, for, as noted in Part I.C. above, USPS proffered no relevant statement from Gerling and no affidavit whatever from King.

Not every sexual harassment claim will lend itself to a continuing violation theory, just as not every offensive incident will support a claim of harassment sufficient to alter the working conditions. But Fitzgerald's assertions of escalating harassment every day present an apt basis for application of the continuing violation theory. Thus, as to Phase II, we reject the district court's conclusion that Fitzgerald was not entitled to invoke the continuing violation theory with respect to her claim of hostile work environment.

### 2. Inapplicability of the Continuing Violation Theory to Phase I

█ We agree, however, with the district court's conclusion that Fitzgerald's claim of sexual harassment in Phase I was not saved by the continuing violation theory. Although Fitzgerald stated that Gerling had subjected her to unwanted sexual overtures daily from the time he arrived in August 1994 until sometime in April 1995, her assertions make it clear that his sexual advances ceased at the end of that period. Though Gerling then proceeded in Phase II to harass Fitzgerald for having rejected his propositions, the Phase II abuse was qualitatively different from his Phase I conduct.

While it may be difficult in some cases to pinpoint the precise time at which the supervisor ceased to make sexual advances and began to punish the employee for rebuffing those advances, Fitzgerald's version of the events presents us with no such difficulty here. None of Fitzgerald's evidence suggests that during the 2½-year period after April 1995 Gerling either made any further sexually suggestive comments to Fitzgerald or offered to abate his abuse and unwarranted criticisms of her work if she would relent and become intimate with him.

Accordingly, the daily abuse during Phase II and the profane and physically intimidating tirade unleashed by Gerling on September 25, 1997, even if motivated by Fitzgerald's rejection of his sexual propositions, cannot reasonably be viewed as a continuation of such propositions. We thus conclude that the Phase I claim could not be deemed timely under the continuing violation theory. Summary judgment dismissing that claim was proper.

 In affirming the dismissal of that claim, however, we do not mean to suggest that evidence of Gerling's sexual advances and Fitzgerald's rebuffs in Phase I would not be relevant or admissible to show Gerling's motivation for his constant harassment of Fitzgerald in Phase II. A plaintiff complaining of sexual harassment must show that the treatment of which she complains was motivated by her gender. *See, e.g., Meritor Savings Bank, FSB v. Vinson*, 477 U.S. at 63–66, 106 S.Ct. 2399; *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d at 289; *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d at 1042. A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period. *See, e.g., Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir.1992); *Black Law Enforcement Officers Association v. City of Akron*, 824 F.2d 475, 482–83 (6th Cir. 1987); *see also United States v. Ashdown*, 509 F.2d 793, 798 (5th Cir.) ("The statute of limitations is a defense . . ., not a rule of evidence. . . . [It] has no bearing on the admissibility of evidence ."), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975). A suggestion that an item of evidence relates to a period that is too remote goes to both the item's relevance and its weight. Although we would be skeptical as to the relevance of Fitzgerald's Phase I evidence if there were a significant hiatus between the end of Phase I and the start of Phase II, we have no serious doubts as to its relevance where there is evidence of a swift transition from entreaty to retribution. Any question as to the weight to be accorded the Phase I evidence in connection with the Phase II claims is, of course, a matter for the jury. *See, e.g., Smith v. Lightning Bolt Productions*, 861 F.2d 363, 367 (2d Cir.1988).

### 3. *The Merits of the Hostile Work Environment Claim*

 We also disagree with the district court's summary dismissal of the claim of hostile work environment based on its view that Fitzgerald could not show any adverse employment action. The court reached that conclusion in part because it found the continuing violation theory inapplicable, and in part because it found the September 25, 1997 incident " 'in and of itself' insufficiently severe" to constitute a materially adverse change in Fitzgerald's working conditions, 36 F.Supp.2d at 503. We have rejected the former premise in Part II.D.1. above. We reject the latter ground because the court viewed the record in piecemeal fashion, failed to draw all permissible inferences in Fitzgerald's fa-

vor, and resolved questions of fact that are reserved for decision by a jury.

First, it was inappropriate for the court to focus solely on the September 25, 1997 incident. Fitzgerald asserted that Gerling unfairly, harshly, and disparately abused her daily. Thus, as even HRD acknowledged, *"more than one* of the acts fell within the regulatory 45–day limitation period...." (HRD Letter at 2 (emphasis added)).

More importantly, because the continuing violation theory is applicable to Fitzgerald's allegations of hostile work environment in Phase II, a factfinder may consider her evidence that Gerling subjected her to unfair harassment every day during that 2½-year period, as well as her assertion that his harassment during that period escalated. HRD appeared to give weight to the fact that Fitzgerald did not lodge a formal complaint with HRD during the lengthy period of claimed constant abuse. Although Fitzgerald's failure to seek administrative assistance during that period is a fact that plainly may be considered in weighing her testimony that she was subjected to harassment that was so constant and so abusive as to materially affect her working conditions, the weighing of the evidence and the decision as to which of competing inferences is to be drawn is solely within the province of the factfinder. The jury will be entitled to find that as Gerling's abuse intensified, it became increasingly difficult for Fitzgerald to perform her job.

In sum, there are questions of fact to be determined in order to resolve Fitzgerald's claim of hostile work environment.

### 4. The Retaliation Claim

 The scope of the district court's rejection of Fitzgerald's claim of retaliation also warrants further discussion. The district court dismissed this claim,

ruling (1) that Fitzgerald did not allege in her EEO Complaint that Gerling retaliated against her for threatening to file an administrative complaint, and (2) that a valid retaliation claim must allege that the employee suffered adverse employment consequences because she lodged or threatened to lodge a complaint about her supervisor, and is insufficient if it alleges "only" that she suffered such consequences because she resisted her supervisor's sexual advances. 36 F.Supp.2d at 498–99. We agree with the first ruling, and need not reach the second.

To the extent that the district court rejected so much of the retaliation claim as was based on an assertion that Gerling abused Fitzgerald because she threatened to file an administrative complaint, we agree that such a claim may not properly be pursued in this action. There was no semblance of that claim in Fitzgerald's EEO Complaint. That part of her claim of retaliation was properly dismissed for lack of exhaustion. However, we need not rule on the district court's view that "rejection of sexual advances is not a protected activity under Title VII," 36 F.Supp.2d at 499, because in this case, Fitzgerald's retaliation claim is coextensive with her claim of Phase II hostile work environment, and would not warrant an award distinct from or in addition to any award she might win on that claim.

Further, the current state of the record suggests that Fitzgerald's claim of disparate treatment (if any) too should be viewed as identical to her claim of hostile work environment. Fitzgerald asserts that two female employees who yielded to Gerling's sexual advances received preferred treatment in that they, though junior to Fitzgerald, were given weekends off, while Fitzgerald was forced to work in their stead. Assuming that this allegation describes a provable disparity, Fitzgerald

nonetheless has cited only to isolated incidents and has made no effort on this appeal to suggest that such incidents were sufficiently numerous or recurrent to make any such claim timely under the continuing violation theory. Thus, to the extent that Fitzgerald intended her assertions that Gerling's sexual partners received preferential treatment to state a claim of disparate treatment that differed from her claim of hostile work environment, the disparate treatment claim was properly dismissed as time barred.

### 5. The Constructive Discharge Claim

■ Finally, we have difficulty with the district court's summary dismissal of Fitzgerald's claim that she was constructively discharged. Preliminarily, we note that although the specific phrase "constructive discharge" was not used in the amended complaint, the pleading asserted that Gerling continually harassed Fitzgerald, that he did so deliberately and in bad faith as retribution for her refusal of his sexual advances, and that his abuse so persisted and escalated that it essentially brought on a psychological breakdown, causing her to became unable to work at all. Such allegations are ample to encompass a theory of constructive discharge. Indeed, the district court did not purport to dismiss this claim on the theory that it was not within the scope of the complaint.

Rather, in dismissing the constructive discharge claim, the court ruled principally that the September 25, 1997 incident in and of itself could not be viewed as a constructive discharge because it did not differ from the treatment that Fitzgerald had received in the past and would not have compelled a reasonable person to resign. That ruling was based in part on the court's view of the continuing violation theory, which we have rejected, and in part on a view of the record that does not draw

permissible inferences in Fitzgerald's favor. A jury would be entitled to take into account not just Gerling's conduct on September 25, 1997, but as well his conduct throughout Phase II. And, crediting Fitzgerald's evidence that Gerling abused her every day for 2½ years, the jury could permissibly find that as a result of the cumulative effect of his constant abuse and unfair criticism—especially if its severity was escalating, as Fitzgerald asserted—a reasonable person on September 25, 1997, would have found the working conditions intolerable. The questions of whether to credit Fitzgerald's evidence and how, objectively, to assess the endurability of her working conditions were questions of fact to be answered by the jury, not matters of law for the court on summary judgment.

### CONCLUSION

We have considered all of USPS's arguments in support of the judgment and, except to the extent indicated above, have found them to be without merit. The judgment is affirmed to the extent that it dismissed Fitzgerald's claims of (a) sexual harassment prior to April 1995, (b) preferential conferral of benefits on other employees who were sexually submissive, and (c) retaliation for her threat to file an EEO complaint. In all other respects, the judgment is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

We note that prior to oral argument of this appeal, Fitzgerald moved in this Court to expand the record in order to introduce, *inter alia*, supporting affidavits of her coworkers, that she submitted in workers' compensation proceedings. We have not considered any of those materials on this appeal because they were not presented to the district court; indeed, many were not even in existence before the judgment in this action was entered. Our denial of the

motion to supplement the record on appeal, however, does not bar Fitzgerald from proffering such evidence, in appropriate form, in the proceedings on remand.

KORMAN, District Judge, dissenting in part

The record in this case is summarized extensively in the majority opinion. The case involves a complaint alleging sexual harassment engaged in by Timonthy Gerling, the supervisor of Lisa Fitzgerald at the Lake Placid Post Office. This conduct ended shortly after Fitzgerald complained to the Postmaster. Nevertheless, she alleges that it was followed almost immediately by two and one-half years of a hostile work environment created by Gerling and directed at Fitzgerald solely because she refused his advances.

The principal issue on this appeal is whether these claims are time-barred under regulations formulated initially by the Civil Service Commission and later by the Equal Employment Opportunity Commission ("EEOC") pursuant to 42 U.S.C. § 2000e–16(b). Specifically, when Congress extended the coverage of Title VII to federal employees in 1972, it conferred on the Civil Service Commission the power to enforce the mandate that all personnel actions affecting federal employees, including those of the Postal Service, should "be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a). The administrative enforcement powers included the issuance of "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42 U.S.C. § 2000e–16(b).

The administrative regulations set out a carefully considered scheme to encourage employees to file discrimination complaints before positions on both sides have hardened. They provide that a person who believes that he or she has been discriminated against for impermissible reasons, including sex, must first seek counseling from the alleged discriminating agency before even filing a formal complaint with the agency. 29 C.F.R. § 1614.105(a). This informal counseling must be sought with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The failure to comply with this rule precludes the filing of a formal complaint with the agency, 29 C.F.R. § 1614.107(a)(2), and precludes a discrimination claim in federal court. *Briones v. Runyon*, 101 F.3d 287, 289–90 (2d Cir.1996).

When it was originally promulgated by the Civil Service Commission, the period within which EEO counseling had to be sought was 30 days. In 1992, the EEOC, to which the rule-making power was later delegated, explained why it had rejected suggestions that it adopt the 180-day period applicable to private sector administrative complaints:

We do not believe that the analogy between the private sector filing period and the federal sector counseling time limit is apt. Private employees must actually file a complaint within 180 days, not just contact an EEOC office about doing so. Private employees may have to travel many miles or use the mail to file a charge with EEOC while federal employees only have to contact a counselor by telephone or often merely visit a counselor who is located in the same work place in order to comply with the time limit. Moreover, a comparison of private sector charge filings and federal sector complaint filings indicates that federal employees file complaints at a rate three time greater than private sec-

tor employees file charges. Further, the earliest possible contact with a counselor aids resolution of disputes because positions on both sides have not yet hardened. Therefore, we believe a significant lengthening of the pre-complaint period is not justified.

57 Fed.Reg. 12634, 12634–35 (April 10, 1992) (hereinafter "EEOC Explanation of Final Rule").

Nevertheless, the EEOC expanded the time limits for seeking counseling from 30 to 45 days. In so doing, it observed that "Part 1614 ... also requires an agency to extend the time limit for contacting a counselor where warranted by the circumstances." Id. at 12635. The circumstances are extremely generous and are "uncommon to statutes of limitations." *Pauling v. Secretary of Dep't of Interior,* 160 F.3d 133, 136 (2d Cir.1998). They expressly provide for extending the 45 day period (1) if the aggrieved employee was not notified of the time limits and was not otherwise aware of them, (2) if the aggrieved employee did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, (3) if the aggrieved employee was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or (4) "for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). The second ground for extending the 45 day period, which is implicated here, was also added in 1992.

Plaintiff in this case did not timely seek EEO counseling for a significant part of the time period that she endured the sexual harassment and the hostile environment alleged in the complaint. Nonetheless, the Postal Service considered whether an extension was justified under the "[Equal Employment Opportunity] Commission

continuing violation theory." This theory covers conduct occurring over a period of time under circumstances in which the discriminatory animus of an employer may not be apparent until some time has passed. Conduct occurring before an employee could reasonably have understood its underlying motivation is not time-barred, even if it took place more than 45 days before EEO counseling was sought. This theory could not avail plaintiff here because the record was clear that she was aware of the reason Gerling was mistreating her. Hence, the Postal Service declined to extend the 45–day period to acts occurring prior to the commencement of that time period. It did, however, consider and reject on the merits the claim that the conduct alleged within the 45–day period constituted a hostile work environment.

The district court here accepted the position of the Postal Service and granted summary judgment. The majority affirms the judgment in part and reverses it in part. I concur in this disposition except to the extent that it holds that plaintiff is entitled to recover for acts that constituted a hostile work environment and that took place more than 45 days prior to the time plaintiff sought EEO counseling. I am unable to join in that part of the holding, because it effectively nullifies the 45–day rule and the administrative scheme of which it is a part, and because the rule adopted by the majority is unsound and inconsistent with the prevailing Title VII law.

I begin first with the 45–day period of limitations and the reasons the EEO gave for declining to invoke the broad discretion it had to toll it. The 45–day period of limitations is prescribed in what is known as a legislative rule. Such rules are adopted pursuant to express authorization by Congress and they "create new law, rights, or duties, in what amounts to a

legislative act." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir.1993); *see also Sweet v. Sheahan*, 235 F.3d 80, 91 (2d Cir.2000). We have held that, "[w]hen Congress delegates to an agency the power to promulgate rules, the [agency] adopts rules with legislative effect.... The [rule] is therefore entitled to more than mere deference or weight. It can be set aside only if the [agency] exceeded [its] statutory authority or if the regulation is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *United States v. Chestman*, 947 F.2d 551, 557–58 (2d Cir. 1991) (en banc) (internal quotations and citations omitted).

The legislative rule at issue here—the 45–day period of limitation—is eminently reasonable. Like most periods of limitations, it reflects a number of significant considerations of policy beyond protection against stale claims. See generally Robert A. Leflar, *The New Conflicts–Limitation Act*, 35 Mercer L.Rev. 461, 469 (1984). One of those considerations is that "the earliest possible contact with a counselor aids resolution of disputes because positions on both sides have not yet hardened." See EEOC Explanation of Final Rule, 57 Fed.Reg. at 12635. This avenue of relief may also have the effect of limiting potential liability for hostile conduct, because such conduct could be stopped if an aggrieved employee seeks timely EEO intervention and avails herself of the follow-up procedures prescribed in the regulations. Indeed, only recently the Supreme Court predicated an affirmative defense on the premise that, "[i]f the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806–07, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 295–

96 (2d Cir.1999). If an aggrieved employee may have an obligation "to avail herself of the employer's preventive or remedial apparatus," *id.* at 807, 118 S.Ct. 2275, surely a regulation that requires her to do so in a timely fashion is an entirely reasonable exercise of the legislative rulemaking power conferred on the EEOC.

Plaintiff here does not challenge the validity of the EEOC regulation. Nor is the application of that regulation here unreasonable. The Postal Service (Human Resources Office) declined to extend the 45–day period because, "the record indicates that [Fitzgerald] had prior knowledge or suspicion of discrimination before [Fitzgerald] sought EEO counseling in that [Fitzgerald's] attorney representative's correspondence states 'postal service management has been made repeatedly aware of this situation.'" Appellant's Supp. Appendix at 18. The Postal Service also found that "a reasonable person in [Fitzgerald's] position would have suspected discrimination months, even years before [Fitzgerald] initiated EEO counseling on October 24, 1997." Id. Significantly, following one of the acts of retaliatory harassment that contributed to a hostile work environment and that occurred as early as April 25, 1995, Fitzgerald "threatened to file an administrative complaint against Gerling for sexual harassment." Supra at 351. Thus, the Postal Service reasonably held that Fitzgerald could not avail herself of the specific tolling provision in the EEOC regulation based on her unawareness of the discriminatory actions. 29 C.F.R. § 1614.105(a)(2).

We need go no further than determine that the Postal Service concluded reasonably that the plaintiff's filing was in large part time-barred. *See Lopez v. Louisiana Nat'l Guard*, 733 F.Supp. 1059, 1071–72 (E.D.La.1990). *Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416

(1976), which holds that Congress did not intend that an adverse EEOC determination would preclude federal employees from litigating anew the substantive merits of their Title VII claims, does not require a contrary result. This case involves the application of a procedural rule that the EEOC was authorized to adopt. It does not involve the substantive merits of the complaint. Nonetheless, even under a standard of *de novo* review, the decision of the Postal Service is clearly correct. Indeed, the approach to equitable tolling applied by the Postal Service is consistent with that followed by a number of the Circuits, and is more liberal than the prevailing Second Circuit law.

Chief Judge Posner's opinion in *Galloway v. General Motors Service Parts Operations,* 78 F.3d 1164 (7th Cir.1996) is particularly instructive. There at issue was the period of limitations for filing a Title VII sexual harassment charge with the EEOC. Judge Posner began by observing "that standard principles of limitations law, notably the discovery doctrine and the doctrines of equitable estoppel and equitable tolling, excuse the claimant from having to file before it is feasible for him to do so, and ... apply to cases brought under Title VII." *Id.* at 1166 (citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

These "meliorative doctrines," he continued, apply equally to sexual harassment cases. *Id.* "Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event." *Id.* The significance of this process to the doctrine of equitable tolling is that, "[i]n its early stages it may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, or may not cause suf-

ficient distress to be worth making a federal case out of, or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures." *Id.* (citations omitted). Because we "do not want to encourage premature or precipitate litigation," conduct that is not made the subject of an immediate complaint is not time-barred provided "the victim of sexual harassment sues as soon as harassment becomes sufficiently palpable that a reasonable person would realize she had a substantial claim under Title VII." *Id.* If she does so "then she sues in time and can allege as unlawful conduct the entire course of conduct that in its cumulative effect has made her working conditions unbearable." *Id.*

Judge Posner addressed specifically circumstances comparable to the present case, "when a long-continued series of harassing acts definitely *are* a series, a pattern, and not merely a set of discrete events, yet it was evident long before the plaintiff finally sued that she was the victim of actionable harassment." *Id.* at 1167. In such a case, Judge Posner concluded,

> while she can still sue provided that the last act of harassment occurred within the statute of limitations, she cannot reach back and base her suit also on conduct that occurred outside the statute of limitations; for she had no excuse for waiting that long. An additional consideration is that the bringing of the suit is almost certain to stop the harassment, so that unlike certain cases of nuisance the plaintiff will not be put to the expense of bringing successive suits. What is more, she can seek injunctive relief against a continuation of the unlawful conduct.

*Id.* (citations omitted). The principle to be extracted from the preceding discussion,

which "organizes the complex and diffuse case law on continuing violations under Title VII[,] is that the plaintiff may not base her (in some cases his) suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct. . . ." *Id.*

The First Circuit applied a similar analysis in *Sabree v. United Brotherhood of Carpenters and Joiners Local 33*, 921 F.2d 396 (1st Cir.1990). A panel that included then-Chief Judge Breyer held that the critical inquiry in determining whether a continuing violation tolled the period of limitations is "what the plaintiff knew or should have known at the time of the discriminatory act." *Id.* at 402. Specifically, *Sabree* held:

> What matters is whether, when and to what extent the plaintiff was on inquiry notice. A claim arising out of an injury which is 'continuing' only because a putative plaintiff knowingly fails to seek relief is exactly the sort of claim that Congress intended to bar by the [300] day limitation period. It is this factor that is the undoing of Sabree, for he has admitted that he believed, at every turn, that he was being discriminated against. A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against. until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. After all, [e]mployers as well as employees are entitled to procedural safeguards in the precincts patrolled by Title VII.

*Id.* (internal quotations and citations omitted). By contrast, *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476 (3d Cir.1997), applying the *Galloway* holding, held that plaintiff's "failure to claim harassment in the 1991 EEOC charge does not destroy her claim, because the evidence shows that the harassment intensified after the charge was filed, and, moreover, she did not realize early on how pervasive or severe the harassment was." *Id.* at 483; *see also Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir.1998) (tolling of statute of limitations was justified where "pattern of harassment was not the kind of violation that . . . would put a worker on notice that his rights had been violated").

The reasoning in *Galloway* and *Sabree* has also been applied in a number of other cases and appears to reflect the prevailing view in six of the Circuits. In addition to the cases cited above, *see Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 (10th Cir.1999); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir.1999); *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14–15 (1st Cir.1998); *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989); *Roberts v. Gadsden Mem'l Hosp.*, 850 F.2d 1549, 1550 (11th Cir.1988); *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983); *contra Morgan v. National R.R. Passenger Corp.*, 232 F.3d 1008, 1014–15 (9th Cir.2000), *petition for cert. filed* (U.S. Apr. 23, 2001) (No. 00–1614). Of particular note in our own Circuit is Judge Kaplan's characteristically scholarly opinion in *Johnson v. Nyack Hosp.*, 891 F.Supp. 155 (S.D.N.Y.1995), *aff'd on other grounds*, 86 F.3d 8 (2d Cir. 1996). There he held that the statute of limitations for filing a complaint in the district court would be tolled where (1) "the discriminatory acts within and without the limitation period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory practice chargeable to the employer," *id.* at 165, and (2) "the circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier."

*Id.* This test, Judge Kaplan continued, "gives due regard both to the defendant's interest in being protected against stale claims and to the plaintiff's interest in adopting strategies designed to deal both with employment discrimination and of being certain that matters have reached a point affording a proper basis for resort to the courts." *Id.* Nevertheless, Judge Kaplan held that the plaintiff's claims were time-barred because the plaintiff "was well aware of the basis for the charges of racial discrimination included in the amended complaint," *id.,* and had not advanced any reason "as to why the civil rights claims were not asserted in federal court until more than seven years after the privileges were revoked, and the Court can conceive of none." *Id.* at 166.

We have never had any occasion to consider, much less reject the prevailing authority discussed above, although the majority rejects it today without discussion. The Second Circuit case law is hardly the seamless web that the majority suggests compels the result here. On the contrary, on careful examination, it seems clear that the result reached by the majority is inconsistent with the Second Circuit approach to the doctrine of equitable tolling and to holdings in cases specifically applying the doctrine in a Title VII context.

While we have acknowledged that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances," *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996), we have held repeatedly that "[e]quitable tolling requires a party to pass with reasonable diligence through the period it seeks to have tolled." *Id.; see also Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (same); *Dodds v. Cigna Secs., Inc.,* 12 F.3d 346,

350 (2d Cir.1993) (equitable tolling will stay running of statutory period "only so long as the plaintiff has exercised reasonable care and diligence" (internal quotations omitted)), *cert. denied,* 511 U.S. 1019, 114 S.Ct. 1401, 128 L.Ed.2d 74 (1994); *Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 264 (2d Cir.1990) (equitable tolling not satisfied in the absence of "affirmative action on the part of [plaintiff] to preserve its right"); *accord Singletary v. Continental Illinois Nat'l Bank & Trust Co.,* 9 F.3d 1236, 1241 (7th Cir.1993) (equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before").

The present case does not present "extraordinary or exceptional circumstances warranting equitable tolling." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). The relevant factual allegations are set forth as follows in the majority opinion:

Fitzgerald stated that "[a]fter the incidents of [retaliatory harassment in] April and May[ ] 1995, and continuing through 1996 and 1997, Gerling became increasingly hostile and abusive toward plaintiff." (Amended Complaint ¶ 90.) She stated that he unjustifiably berated her about her hours and productivity; he attempted to force her to work overtime when she was not scheduled to work, and he criticized her when she worked scheduled overtime; he treated her more harshly than male employees and than two female employees with whom he had had or was having a sexual relationship. Fitzgerald alleged that the harassment was "ongoing," "repeated," and "continuing" (EEO Complaint ¶¶ 10, 12, 20), occurring "day to day" (Amended Complaint ¶ 92), as Gerling "regularly and unfairly criticized" her work (*id.* ¶ 93) "repeatedly and on a continuing

basis" (*id.* ¶ 91); she alleged that "[t]hese acts of hostility, criticism and harassment were severe and persistent and occurred on a continuing basis from April 1995 through September 1997" (*id.* ¶ 121). Thus, although the final abusive incident on September 25, 1997, was separated from Gerling's final sexual advances by a gap of nearly 2½ years, Fitzgerald's assertions plainly alleged that there was no interruption in the allegedly unwarranted abuse to which she was subjected during that 2½-year Phase II period.

Supra at 363. Even under the most generous equitable tolling standard, Fitzgerald's claim fails because, as the Postal Service found and Fitzgerald does not counter with any persuasive argument, the retaliatory harassment had proceeded well past the time during which a reasonable person would have sought EEO counseling.

In reaching a contrary conclusion here, the majority does not refer to the doctrine of equitable tolling or the considerations of policy that provide the basis for tolling the period of limitations, even though the 45–day rule is "analogous to a statute of limitations and is … considered subject to waiver, estoppel, and equitable tolling." *See Briones v. Runyon,* 101 F.3d 287, 290 (2d Cir.1996). Instead, the majority holds that, because the hostile environment was permitted by the employer "to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination," the 45–day period of limitations must be tolled. Supra at 362. The only support for this holding is one sentence of dictum taken out of context from *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), that was not accompanied by the citation of a single case or by any explanation. Supra at 359. The dictum has since been repeated in two subsequent cases.

*See Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 766 (2d Cir.1998); *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 (2d Cir.1996). Nevertheless, as is shown below, it is contrary to Second Circuit law.

In *Lambert v. Genesee Hospital,* 10 F.3d 46 (2d Cir.1993), it was held that, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Id.* at 53. A "challenge to systematic discrimination is always timely if brought by a present employee, for the existence of the system deters the employee from seeking his full employment rights or threatens to adversely affect him in the future." *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 761 (9th Cir.1980) (citation omitted). Consistent with the policy underlying the rule, *Lambert* emphasized, however, that "[t]he continuing violation exception applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists or discriminatory employment tests…. *[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation. Since [the Lambert] plaintiffs failed to produce evidence of any such policy or mechanism here, the charge-person claims were properly dismissed as time-barred." Lambert,* 10 F.3d at 53 (citations omitted) (emphasis added).

In *Cornwell v. Robinson,* 23 F.3d 694 (2d Cir.1994), it was suggested that a continuing violation may also be shown "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or

practice." *Id.* at 704. While the majority relies on this dictum, it ignores the context of the case and the manner in which it was limited subsequently. *Cornwell* was a hybrid case; it involved a combination of "personnel policies [that] discriminated on the basis of gender and ... race- and gender-based harassment that [the defendant] and its supervisory personnel permitted to continue." *Id.* Judge Kearse, writing in *Cornwell,* continued, "[a]gainst the background of [the defendant's] gender-discriminatory policies *and* the hostile work environment created by those male [employees] who sought to rid MacCormick [a facility operated by the defendant] of female [employees], the [district] court properly concluded that the acts of discrimination and harassment by the individual defendants constituted a continuing wrong...." *Id.* (emphasis added).

Subsequently, in an opinion joined by Judge Kearse, *Connecticut Light & Power Co. v. Secretary of Dep't of Labor,* 85 F.3d 89 (2d Cir.1996), *Cornwell* was read as holding that a "continuing violation exists where there is a relationship between a series of discriminatory actions and an invalid, underlying policy." *Id.* at 96. The prevailing law was summarized as follows: "[t]hus, in cases where the plaintiff proves i) an underlying discriminatory policy or practice, and ii) an action taken pursuant to that policy during the statutory period preceding the filing of the complaint, the continuing violation rule shelters claims for all other actions taken pursuant to the same policy from the limitations period." *Id.* Both of these conditions were met in that case.

The common thread that runs through the Second Circuit *holdings* from *Lambert* to *Connecticut Light & Power Co.,* is the requirement of an actual underlying policy as a predicate for applying the continuing violation rule. This thread was not severed in *Quinn v. Green Tree Credit Corp.,*

159 F.3d 759 (2d Cir.1998) and *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708 (2d Cir.1996), which were decided after *Connecticut Light & Power Co.,* and which repeat without qualification the *Cornwell* dictum that the continuing violation exception can apply where "specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy." *Quinn,* 159 F.3d at 766; *Van Zant,* 80 F.3d at 713. Both of these cases refused to toll the period of limitations, and I am not aware of any Second Circuit case that has applied this dictum to toll the statute of limitations in the absence of an underlying policy. We have recently rejected the notion that mere repetition can convert dictum to binding precedent, and we declined to follow an oft-repeated dictum that had never been the basis for a holding. *Francis v. City of New York,* 235 F.3d 763, 767–68 & n. 2 (2d Cir.2000). We should take the same approach with respect to the *Cornwell* dictum.

In any event, there is no basis for the suggestion that—in the words of the *Cornwell* dictum—the Postal Service permitted "specific and related instances of discrimination ... to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell,* 23 F.3d at 704. While it is true that the Postmaster of the Lake Placid Post Office may have ignored plaintiff's complaints, there was in place a mechanism to deal with precisely this kind of supervisory neglect, namely, an EEO counselor and other follow-up procedures prescribed in the regulations. Plaintiff did not avail herself of that remedy for almost two and one-half years. She offers no justification for the failure to do so. Thus, even if the Postal Service may be vicariously liable for the hostile and discriminatory conduct of its employee, it is a considerable stretch to attribute plaintiff's ordeal to a policy or practice of the Postal Service to permit

the discrimination she suffered to go un-remedied. Nor does plaintiff allege the existence of such a policy. Instead, the very same conduct that constitutes the elements of the cause of action against the Postal Service for harassment and retaliation (offensive conduct by one supervisory employee and the failure of another supervisory employee to stop it) is also said to constitute the alleged discriminatory practice or policy. I do not understand why this justifies invoking the doctrine of equitable tolling. Indeed, the application of *Cornwell* here means that, for all practical purposes, the period of limitations would be tolled in every case involving sexual harassment or hostile work environment. Perhaps this should be the law. Nevertheless, I am not persuaded that it is consistent with the considerations underlying the doctrine of equitable tolling. Nor am I persuaded that we should override the reasonable administrative scheme that the EEOC adopted here. Accordingly, I respectfully dissent.