Cecil L. HUDSON, Plaintiff–Appellant,

v.

WESTERN NEW YORK BICS DIVISION, Tomra of North America, Inc., Defendants–Appellees.

No. 02–9270.

United States Court of Appeals, Second Circuit.

Sept. 9, 2003.

526

Arnold Weiss, Raichle Banning Weiss PLLC, Buffalo, NY, for Appellant.

Daniel J. Moore, Harris Beach LLP, Pittsford, NY, for Appellees.

PRESENT: SOTOMAYOR, WESLEY, Circuit Judges, and POLLACK, District Judges.*

*SUMMARY ORDER*

ORDERED, ADJUDGED AND DE-CREED that the judgment of the district court is AFFIRMED.

* The Honorable Milton Pollack, Senior Judge, United States District Court for the Southern

District of New York, sitting by designation.

Plaintiff Cecil Hudson appeals from a judgment of the United States District Court of the Western District of New York (Skretny, J.) entered September 26, 2002, granting defendants' motion for summary judgment and dismissing his employment discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.; and New York Human Rights Laws, Executive Law § 296, et seq.[1] We review the district court's grant of summary judgment de novo, drawing all inferences in favor of the non-moving party, *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir.2002), and for the reasons that follow, we conclude that summary judgment was properly granted.

Plaintiff, who is African–American, was employed as a truck driver in defendants' bottle and can recycling business. He began work as a sorter in 1983, and was promoted to a driver position in 1987. Before a full time route became available, plaintiff filled in as a "helper" assisting drivers on various other routes. Except for a brief period in the early 1990s when plaintiff drove a suburban route,[2] plaintiff was assigned to an "inner city route," which he characterizes as less desirable because of the numerous small "mom and pop" stores that are more difficult to service and because the bottles recycled on those routes tended to be heavy quart glass cases. Plaintiff had only a Class B

license, and therefore could only drive on routes where he would not be required to drive a tractor-trailer, which requires a Class A License.[3] Until 1996, there were only two suburban routes that did not require a Class A License – one of these was the route plaintiff drove in the early 1990s; after 1996, when routes were consolidated, all suburban routes required this license. Plaintiff claims that he repeatedly requested transfers to a suburban route, but that he was told that those routes " 'are not for you people!' "

On March 9, 1999, while lifting a box of glass bottles, plaintiff seriously injured his left arm and went out on a medical leave of absence. It is undisputed that plaintiff was unable to return to his position as a driver due to his injuries, although he claims that he would have been able to perform "light duty" work and that he requested such light duty placement. In September 1999, plaintiff was advised by defendants that the six month medical leave of absence allowed under their policy had expired, but that he would be afforded an additional twelve weeks of leave under the Family and Medical Leave Act. On December 3, 1999, plaintiff was advised that he was "being placed on layoff" because his leave had expired and he was still unable to return to work.

Plaintiff argues first that the district court erred in concluding that his allegations relating to events that occurred during his active employment as a truck driver for defendant, including alleged racial discrimination in the allocation of sub-

---

**1.** Plaintiff also asserted a state law breach of contract claim and a claim under 42 U.S.C. § 1981, but does not challenge the district court's dismissal of those claims on appeal.

**2.** The parties disagree as to whether plaintiff drove this route for several months or almost a year. Although we recognize that plaintiff's own testimony on this issue is inconsistent,

we resolve all factual disputes in his favor for purposes of this motion, and assume that he drove the suburban route for almost a year.

**3.** Contrary to plaintiff's suggestion in his brief, nothing in the record indicates that defendants in any way prevented plaintiff from obtaining a Class A license.

urban and inner-city truck routes and in the provision of assistants, or "helpers" to certain employees, were time barred because they occurred more than 300 days before the filing of his EEOC complaint on February 8, 2000. According to plaintiff, the discriminatory events he complains of are part of a continuing violation that ended with his discriminatory termination in December 1999. Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.2001) (citations and internal quotation marks omitted). The untimely events plaintiff alleges, however, are discrete acts such as refusing to transfer him to suburban routes upon his alleged request and to give him requested helpers, all of which necessarily occurred before he went on medical leave on March 9, 1999. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) ("multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation"). Further, although plaintiff's termination claim is timely, the claims relating to discriminatory assignments cannot be said to be part of an ongoing policy of discrimination related to his termination. *Cf. id.* ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."). We therefore find that the continuing violation theory is inapplicable and that plaintiff's discrimination claims– apart from those relating to his termination and the failure to accommodate under the ADA – are untimely.[4]

■ Next, plaintiff argues that the district court erred in concluding that he had failed to establish a prima facie case of race or age discrimination as to his termination. *Cf. Gregory v. Daly*, 243 F.3d 687, 695 (2d Cir.2001) (an employee establishes a prima facie case by showing "(1) her membership in a protected class, (2) her qualification for the job benefit at issue, (3) that she was subjected to adverse employment actions, and (4) that these actions were taken under circumstances giving rise to an inference of discrimination") (citations and quotation marks omitted). According to plaintiff, the circumstances of his termination give rise to an inference of discrimination because two white drivers who were also out on disability leave, Jim Jeziorski and Ron Gaske, were not terminated even though they were unable to work for more than six months. Instead, plaintiff claims, Jeziorski was allowed to return to light duty work for several days and then go out on disability leave for another six months. He also contends that Gaske was allowed unlimited sick leave during the early 1990s.

---

4. We also note that even if plaintiff's claims relating to conduct that occurred during his active employment were timely, summary judgment was properly granted. Having carefully reviewed the record, including the sur-reply affidavit that plaintiff argues was improperly struck by the district court, we find that even if there is a dispute as to whether plaintiff requested a transfer, such a dispute is immaterial because plaintiff has offered no evidence that any suburban routes that did not require a Class A license were available during the relevant time period, nor has he provided anything from which a jury could conclude that helpers were assigned based on race. Thus, plaintiff could not establish a prima facie case of discrimination relating to these allegations.

Plaintiff's argument fails because neither Jeziorsk nor Gaske is similarly situated. Although Jeziorski, like plaintiff, went on medical leave in March 1999, the similarity ends at that point. Defendants have provided medical records and annual attendance history sheets indicating that Jeziorski, unlike plaintiff, was cleared by his doctor for a return to work at full duty on August 30, 1999, within the nine month leave of absence period. Jeziorski then worked at full duty until he *re*-injured himself in December 1999 and took another leave of absence. By the time Jeziorski was able to return to work again (once more within the established leave period) defendants had implemented a "light duty" policy, and Jeziorski returned to work at his doctor's recommendation under that policy.

Gaske is also not similarly situated to plaintiff. In fact, there is no evidence that Gaske was out sick during the time when plaintiff drove Gaske's route in the early 1990s. Gaske himself denies any such illness, the complete employment records produced by defendant indicate that Gaske was out for two months due to illness in late 1998 only, and there is nothing in the record to support plaintiff's conclusory allegation that Gaske was "out with an injury or sick or something" for almost a year in the early 1990s. Moreover, defendants have provided uncontroverted evidence that eight white employees were terminated pursuant to the leave of absence policy, and that seven of these terminations occurred after work-related injuries. We therefore find no error in the district court's conclusion that plaintiff had failed to make out a prima facie case of race discrimination.[5]

■ Finally, there is nothing in the record suggesting that defendants violated either Title VII or the ADA by adopting a policy in June 2000 allowing injured employees to return for "light duty" work as a transition to regular full time work. Plaintiff does not dispute that no such policy was in place at the time he allegedly sought light duty work in 1999, and defendants note that white drivers, including Jeziorski and Gaske, were also not allowed to return for light duty work before the new policy was adopted. Further, contrary to plaintiff's suggestion, there is no requirement under the ADA that defendants create a new light duty position for him, and plaintiff has not offered any evidence that there was light duty work available in 1999, even assuming that he did seek light duty work as a reasonable accommodation. *See Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1035–36 (2d Cir.1993) ("Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies." (quoting *Sch. Bd. v. Arline*, 480 U.S. 273, 289 n. 19, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987))).

We have considered plaintiff's remaining arguments and find them to be without merit. The judgment of the district court is therefore AFFIRMED.

---

**5.** As plaintiff has proffered no evidence of any similarly situated younger employees who were differently treated, we find no error in the district court's dismissal of his age discrimination claim fails as well.