| |
|---|
| **Rivera v Fortune Society, Inc** |
| 2024 NY Slip Op 31205(U) |
| April 9, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 150022/2023 |
| Judge: Lynn R. Kotler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: HON.LYNN R. KOTLER, J.S.C.                    PART 8

Samuel Rivera                                          INDEX NO.  150022/2023

                                                       MOT. DATE

            - v -
                                                       MOT. SEQ. NO. 003

The Fortune Society, Inc., et. al.


The following papers were read on this motion to/for __dismiss_____

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | NYSCEF DOC No(s).__22-27____ |
| Notice of Cross-Motion/Answering Affidavits — Exhibits | NYSCEF DOC No(s).__29_____ |
| Replying Affidavits | NYSCEF DOC No(s)._30-31, 34-35_ |

Plaintiff Samuel Rivera ("Rivera"), a 60-year-old Hispanic Native American man, has brought this action for race, national origin, and age-based discrimination and retaliation against his former employer, The Fortune Society Inc. ("Fortune") and his former supervisor, Leonard Chavis ("Chavis"). Fortune and Chavis now move pre-answer to dismiss the action in its entirety pursuant to CPLR § 3211(a)(7). Plaintiff opposes the motion. For the reasons that follow, the motion is granted in part and denied in part.

The following facts are asserted in the complaint. Rivera has been employed by Fortune from 1992-1994, 1997-2002, 2005-2007, and most recently from September 2017-May 22, 2020. In his most recent position for Fortune, Rivera was employed as the Associate Vice President of Housing. During his tenure in this position, Rivera reported to Chavis. Rivera alleges that he was harassed and discriminated against by Chavis and that Fortune condoned this behavior.

In September 2017, Chavis held the position of Fortune's Chief Financial Officer. Fortune then reassigned Chavis to the position of Chief of Human Resources where he was responsible for administering Fortune's employment and EEO policies including anti-discrimination, harassment and no retaliation policies.

In late 2019, Rivera approached Chavis in his role as Chief of Human Resources and inquired as to why Fortune was open on Columbus Day when it is "an organization dedicated to uplifting minority communities and should not be celebrating colonization." Rivera also told Chavis that, as a Native American man, it was important to him that Fortune and Chavis refer to the day as Indigenous Peoples' Day. Chavis allegedly laughed mockingly at Rivera's request. Rivera responded to this laughter by telling Chavis "it's not funny." For the rest of the day, any time that Rivera entered a room, Chavis would

Dated:  4/9/24                                    _____
                                                 **HON. LYNN R. KOTLER, J.S.C.**

**1. Check one:**            ☐ **CASE DISPOSED**    ☒ **NON-FINAL DISPOSITION**

**2. Check as appropriate: Motion is**   ☐GRANTED ☐ DENIED ☐ GRANTED IN PART ☒ OTHER

**3. Check if appropriate:**    ☐SETTLE ORDER ☐ SUBMIT ORDER ☐ DO NOT POST

                                ☐FIDUCIARY APPOINTMENT ☐ REFERENCE

[* 1]

make pointed comments such as "Sam's here, no one say Columbus in front of him" and "you know Sam, with all his Native American stuff." Chavis made such comments on at least three occasions. Each time, Rivera repeated that the comments weren't funny and told Chavis that "as a Native American identifying person, this is very offensive."

Following this incident, Rivera began to hear from his coworkers that Chavis disliked him and was trying to get him fired. In December 2019 Rivera was talking to the Associate Vice President of Contracts and Risk Management, Benjamin Metsch ("Metsch"). Rivera told Metsch that Chavis disliked him to which Metsch responded, "yeah, he wants you out, man!" In or around early 2020, Rivera was having a telephone conversation with the former Employee Relations and Compliance Counsel, Stephanie Siaw. Siaw told Rivera "I'm really sorry to tell you this, but I have to because you've been great to me...and you need to know this: Leonard [Chavis] is determined to get you out of Fortune, and I don't agree or understand why but he's committed to getting you out." She also told Rivera "Sam thinks that he can do whatever he wants in [this] place. He tries to run things in Harlem his way and I don't like it."

In early 2020, Rivera had a 2019 performance evaluation with Fortune's Executive Vice President, Stanley Richards. At this evaluation, Rivera addressed two issues: 1) Rivera was being paid less than similarly situated non-Native and/or non-Hispanic coworkers. This included Richard Day, an African American man who worked as the Associate Vice President of Education and who had the same rank as Rivera but made significantly more than him. Richards promised to look into this, but Fortune did not conduct a pay equity analysis, give Rivera a pay raise, or otherwise take any remedial action; and 2) Rivera discussed Chavis' behavior and advised Richards that he had been told by multiple people that Chavis was trying to get Rivera terminated. Richards had another meeting with Rivera an hour later which included CEO JoAnne Page. In the second meeting, Page assured Rivera that he was "invaluable" to Fortune and that they would have a discussion with Chavis about his behavior.

A week later, another meeting was held between Rivera, Richards, Page and Chavis. In this meeting Chavis allegedly admitted to his behavior stating, "I owe you an apology for saying some really nasty things." He also admitted that he told multiple Fortune employees that he wanted Rivera "out" and that he was "gunning" for him. At the end of the meeting, Page did not discipline Chavis, but rather simply reminded Chavis and Rivera that they were both important to Fortune and that they needed to work together. No investigation, training, counseling plan, or remedial action was implemented to deal with Chavis' behavior. Following these meetings, Rivera received the lowest score he had ever received on a performance evaluation which deprived him of a salary increase.

Additionally, these conversations did not lead to a change in Chavis' behavior. Rather, Chavis continued to exhibit hostile behavior towards Rivera. In or around April 2020, on a Senior Executive Zoom call with multiple executives present, Chavis disparaged Rivera's work in Harlem and stated that the Harlem office was not capturing meals on the Food and Nutrition data report. Chavis never contacted Rivera separately or in advance of the meeting about these concerns. The Senior Director of Evaluation and Quality Improvement, Alison Wright, was present on the call and stated that, while the data reports were not fully current, the Food and Nutrition data for the Harlem office was up to date through April 1, 2020, which was compliant with Fortune's practices. Rivera therefore states that he was disparaged without good reason. Furthermore, at the time that Chavis disparaged Rivera's work, Chavis was aware that Fortune was experiencing IT issues which affected the teams' ability to collect and record data. Harlem was not the only department having data reporting issues due to the increased demand and practical problems, but Rivera was the only Vice President that Chavis targeted.

[* 2]

Chavis allegedly continued to admonish and harass only Rivera about the Harlem Meals data. On April 6, 2020, Chavis send a group email complaining that no data had been received from the Harlem office concerning meals. Rivera confirmed that meals data was entered up to April 1, 2020 and advised Chavis that the organization would be fully up to date by close of business on April 8, 2020. Chavis did not respond, but Rivera then received an email from the Associate Vice President of Congregate Housing, Angela Scott stating that Chavis had reached out to her via email and requested that she address the Harlem meals data issue, undermining Rivera who was responsible for that process. Chavis continued to involve other members of the team in the Harlem meals report issue and avoided speaking to Rivera directly.

Additionally, Chavis found other ways of undermining Rivera. Rivera heard from three coworkers that Chavis was working behind the scenes to make him look bad and to get him terminated. The Senior Director of Facilities, Tim Sheldon, told Rivera that Chavis would block Rivera's orders, but no one else's, preventing Rivera from working efficiently and undermining his authority. Metsch told Rivera that Chavis would regularly question Metsch about Rivera's involvement in housing cases, causing delays in the resolution of those cases. The Associate Vice President of Human Resources, Ms. Robin, told Rivera that Chavis "wants you out of Fortune, and he's gunning for you" and advised Rivera to "watch your back."

On April 6, 2020, Rivera sent a formal complaint memorandum to COO Miceli to address Chavis' actions. In the memo Rivera complained that three separate coworkers had advised him that Chavis was trying to get him terminated. He stated that he did not feel safe at work, that Chavis had admitted to his inappropriate behavior in the past, and that, despite numerous attempts to address the behavior, Chavis had not been disciplined.

The complaint was not addressed and Chavis was assigned to supervise Rivera's teams' return to office post-COVID. Facing continued harassment, Rivera resigned from his position on May 22, 2020. He claims that he was constructively discharged. Upon Rivera's resignation, Scott, plaintiff's younger female African American coworker, was promoted to Rivera's former position. Rivera claims that Chavis favored Scott and had been "grooming her" to replace him and run the Harlem office.

In his amended complaint, plaintiff alleges nine causes of action: race and national origin discrimination in violation of the New York State Human Rights Law, Exec Law § 296 *et seq.* ("NYSHRL") (1st COA) and the New York City Human Rights Law, Admin Code § 8-101 *et seq.* ("NYCHRL") (2nd COA); hostile work environment (3rd COA); age-based discrimination in violation of the NYCHRL (4th COA) and NYSHRL (5th COA); retaliation under the NYSHRL (6th COA), NYCHRL (7th COA, Labor Law § 215 (8th COA) and violation of the Not-For-Profit Corporation Law § 715-b (9th COA).

Parties' arguments

Fortune and Chavis argue that plaintiff's allegations pre-dating December 30, 2019 are time-barred under the NYSHRL and NYCHRL and therefore these claims should be dismissed. Movants further argue that, even if the allegations are not time barred, the causes of action alleging race, national origin and age discrimination also fail as a matter of law. They assert that none of Rivera's allegations give rise to an inference of discrimination and that none of the alleged comments of other employees indicated that Chavis referenced Rivera's race, national origin, or age. They also argue that Chavis' alleged behavior never rose to a level the level of creating a hostile work environment, and that the behavior was merely at the level of "petty slights and trivial inconveniences." Movants also claim that the disparate treatment claims fail because Rivera fails to introduce any similarly situated employees to compare his treatment to.

Regarding the causes of action for retaliation pursuant to the NYSHRL and NYCHRL, Fortune and Chavis argue that Rivera failed to allege that he suffered any legally cognizable adverse action and failed to establish a causal connection between engaging in a protected activity and an adverse action. The movants specifically contend that the general assertion that Chavis retaliated against Rivera by "continuing his hostile behavior" lacks specific detail and does not constitute an actionable adverse action, the poor performance evaluation is insufficient because plaintiff fails to allege that it differed from his previous evaluations, and plaintiff has failed to allege sufficient facts to substantiate a constructive discharge claim, to wit, that Fortune deliberately or intentionally created an environment so unpleasant that it forced him to resign.

Finally, with regard to the final two causes of action for retaliation pursuant to the NYLL and NFPC, movants argue that neither cause of action is properly pled. Fortune and Chavis assert that the NYLL cause of action must fail because Rivera did not assert any allegations that suggested that he ever spoke to anyone about a purported violation of the NYLL. They assert that the NFPC cause of action is insufficient because Rivera does not assert any allegations indicating what corporate policies he believed were violated and or that he engaged in a whistleblower activity.

Rivera opposes the motion, and maintains that his allegations are timely because: 1) the statute of limitations was tolled by the March 20, 2020 Executive Order 202.8 in response to the COVID pandemic; and 2) the continuing violation doctrine allows the statute of limitations to be delayed until the last discriminatory act in furtherance of the policy of discrimination, and thus all allegations may be considered.

Rivera further argues that he has alleged sufficient facts to make out the causes of action for race and national origin discrimination because he was paid less than similarly situated, non-Hispanic and non-Native American employees and because the Columbus Day incident is sufficient to infer discrimination at this point in the litigation. He maintains that he has alleged sufficient facts to make out the causes of action for age discrimination because he alleged that Chavis sought to and did replace him with a younger female of Chavis' same race.

With regard to the retaliation claims, Rivera asserts that he only needs to demonstrate that the Chavis and Fortune's conduct would be reasonably likely to deter a person from engaging in a protected activity. Rivera argues that he has demonstrated such a likelihood of deterrence. He also asserts that, contrary to the movants' claims, he need not explicitly reference a violation of the NYLL to maintain his NYLL retaliation cause of action; an informal complaint is enough to trigger the NYLL's protection.

**DISCUSSION**

Pursuant to CLPR § 3211(a)(7), a party may move to dismiss one or more causes of action asserted on the ground that the pleading fails to state a cause of action. The court must accept the facts as alleged in the complaint as true, accord plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory (*Morone v. Morone*, 50 NY2d 481 [1980]; *Rovello v. Orofino Realty Co.*, 40 NY2d 633 [1976]). "Nevertheless, allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration" (*Abramovitz v. Paragon Sporting Goods Co.*, 202 AD2d 206 [1994]). A motion to dismiss must be denied if "from the pleadings' four corners, 'factual allegations are discerned which taken together manifest any cause of action cognizable at law'" (*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 NY2d 144 [2002] quoting *Polonetsky v. Better Homes Depot*, 97 NY2d 46 [2001]).

To state a prima facie case of discrimination under the NYSHRL and NYCHRL, plaintiff must allege that: [1] he is a member of a protected class; [2] he was qualified to hold the position; [3] he suffered an adverse employment action (NYSHRL) or an action that disadvantaged him (NYCHRL); and [4] the adverse action occurred under circumstances giving rise to an inference of discrimination." (*Harrington v. City of New York*, 157 AD3d 582 [1st Dept 2018]; *Forrest v. Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]). Meanwhile, a hostile work environment under the NYSHLR exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (*Forest, supra* at 310 quoting *Harris v. Forklift Sys., Inc.,* 510 US 17 [1993]). By contrast, the standard for a hostile work environment under the NYCHRL is more liberal, requiring a showing that the plaintiff was treated less well than other employees because of a protected characteristic (*Abe v. New York University*, 169 AD3d 445 [1st Dept 2019] citing *Williams v. New York City Hous. Auth.*, 61 AD3d 62 [1st Dept 2009] *lv denied* 13 NY3d 702).

First, the court considers movants' argument that plaintiff's allegations pre-dating December 30, 2019 are time-barred under the NYSHRL and NYCHRL and therefore these claims should be dismissed. "[I]f a plaintiff has experienced a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it" (*Hudson v. Western New York Bics Div.*, 73 Fed Appx 525 [2d Cir 2003] quoting *Fitzergald v. Henderson*, 251 F3d 345 [2d Cir 2001]). The conduct plaintiff complains of is all part of the same practice and policy of discrimination and therefore the continuing violation doctrine applies, and the allegations pre-dating December 30, 2019 may be considered.

The court finds that plaintiff has alleged sufficient facts to survive defendants' motion to dismiss. Plaintiff alleges that he was a member of a protected class, qualified to hold the position that he was in and both suffered adverse employment actions or actions that disadvantaged him. Specifically, plaintiff claims that he was given negative performance evaluations without basis, was underpaid in comparison to similarly situated non-Native American and/or non-Hispanic coworkers, was replaced by a younger report who was favored and groomed after plaintiff's alleged constructive discharge and that Chavis micromanaged his work and made public, disparaging comments about plaintiff with regards to, *inter alia*, his Native American race/national origin. The court rejects defendants' contention that these acts are insufficient to give rise to an inference of discrimination. Indeed, at this stage of the litigation, plaintiff need only allege sufficient facts when reading the complaint in the most favorable light, a burden plaintiff has easily met here.

The court next turns to plaintiff's retaliation claims. Generally, to state a claim for retaliation, plaintiff must demonstrate that: [1] he engaged in a protected activity by opposing conduct prohibited thereunder; [2] defendants were aware of that activity; [3] he suffered an adverse action based upon his activity; and [4] there was a causal connection between the protected activity and the adverse action (*Forrest v. Jewish Guild for the Blind, supra*).

Further, Labor Law § 215 (1)(a)(i) states that

> no employer... shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee because such employee has made a complaint... that the employer has engaged in conduct that the employee... believes violates any provision of this chapter.

The court notes that, although defendants contend otherwise, an employee does not need to explicitly reference a section of the Labor Law to trigger the protections of the Labor Law (Labor Law § 215[1][a][stating that "an employee complaint... need not make explicit reference to any section or provision of this chapter to trigger the protections of this section"]). Meanwhile, Not-For-Profit Law §

Page 5 of 7

[* 5]

715-b creates an implied private right of action for employees who are retaliated against or subject to adverse employment consequences as a result of whistleblowing activities (*Ferris v. Lustgarten Found.*, 189 AD3d 1002 [2d Dept 2020]).

Here, the court finds that plaintiff has adequately alleged claims for retaliation under the NYSHRL, NYCHRL, Labor Law Section 215(a)(1) and Not-For-Profit Law § 715-b. Plaintiff claims that Fortune failed to create, implement and/or enforce a Whistleblower policy. He alleged that in early 2020, he engaged in a protected activity when he alerted Page and Richards to the comments that Chavis had made to other employees of Fortune. Such comments included that he disliked Rivera and was trying to get Rivera terminated, actions which Rivera claims violate corporate policy. Both Fortune and Chavis were aware that Rivera reported Chavis' behavior because Page and Richards were present at the original meeting and Chavis was present at the later meeting where he admitted to his inappropriate behavior and admitted that he wanted Rivera to be terminated. Following these meetings, Rivera received his lowest score on a performance evaluation which prevented him from getting a salary increase. Additionally, Rivera alleged that after these meetings, Chavis disparaged Rivera's work in front of his coworkers and superiors during the April 2020 Senior Executive Zoom call without just reason and that he continued to tell other employees that he wanted to get Rivera terminated. These qualify as adverse actions (see *Mitchell v. TAM Equities, Inc.*, 27 AD3d 703 [2d Dept 2006] [finding that for the purposes of a motion to dismiss, arbitrary reprimands and berating an employee without reason may qualify as retaliatory adverse actions]). As plaintiff's counsel points out, Chavis' behavior could easily dissuade a reasonable worker from lodging further complaints. This is sufficient to make out a cause of action for retaliation at this early stage of litigation. Therefore, plaintiff's sixth, seventh, eighth and ninth causes of action premised upon a retaliation claim survive defendant's motion to dismiss.

Accordingly, it is hereby

**ORDERED** that the motion is denied; and it is further

**ORDERED** that Fortune and Chavis shall answer the complaint within 30 days from entry of this decision/order; and it is further

**ORDERED** that the parties in the above captioned matter are hereby directed to submit a proposed Preliminary Conference order on consent on or before **June 7, 2024**.

Pursuant to the Uniform Civil Rules for the Supreme Court and the County Court § 202.11:

> Counsel for all parties shall consult prior to a preliminary or compliance conference about (i) resolution of the case, in whole or in part; (ii) discovery, including discovery of electronically stored information, and any other issues to be discussed at the conference, (iii) the use of alternate dispute resolution to resolve all or some issues in the litigation; and (iv) any voluntary and informal exchange of information that the parties agree would help aid early settlement of the case. Counsel shall make a good faith effort to reach agreement on these matters in advance of the conference.

All sides are directed to meet and confer before the above date and present a proposed preliminary conference order on consent, completing page 1 (and if necessary, the additional directives) of the preliminary conference order form available on the nycourts.gov website at:

https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/PC-Genl.pdf

Proposed preliminary conference orders must be filed on NYSCEF. If all sides do not consent to completing the preliminary conference order outside of court, the parties SHALL submit a joint letter on

Page 6 of 7

[* 6]

or before the above date advising as to the status of the meet and confer and what issues, if any, have arisen which prevent the parties from completing a proposed preliminary conference order on consent.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby expressly rejected and this constitutes the decision and order of the court.

Dated: _____
New York, New York

So Ordered: _____
Hon. Lynn R. Kotler, J.S.C.